IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No.18-00328-01-CR-W-HFS |
| CACI R. CLIZER, | |
| Defendant. | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties**. The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, and Stefan C. Hughes, Assistant United States Attorney, and the defendant, Caci R. Clizer ("the defendant"), represented by John O'Connor.

The defendant understands and agrees that this plea agreement is only between she and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea**. The defendant agrees to and hereby does plead guilty to Count One of the lesser-included offense of Count One of the indictment charging her with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), that is conspiracy to distribute meth actual

The defendant agrees to and hereby does plead guilty to Count Three of the indictment charging her with a violation of 21 U.S.C. § 924(c)(1)(A)(i), that is, knowingly possessing firearms in furtherance of a drug-trafficking crime.

By entering into this plea agreement, the defendant admits that she knowingly committed these offenses, and is in fact guilty of these offenses.

3. **Factual Basis for Guilty Plea**. The parties agree that the facts constituting the offenses to which she is pleading guilty follow:

On March 27, 2015, investigators interviewed a Confidential Source (CS). During this interview, the CS discussed Caci Clizer getting an ounce of powder cocaine from a source in KCMO every two or three days. The CS warned investigators that Clizer carries a handgun for protection and will have the gun on her person during drug transactions.

On May 28, 2015: An ATF CI purchased approximately 7.8 grams of methamphetamine from Clizer for $500.00. After getting the money, Clizer sent the CI to Lisa Pearce's house to get the methamphetamine out of the mailbox.

On May 29, 2015, investigators interviewed Misty Searle at the Buchanan County Jail. During this interview, Searle said she has known Clizer for about fifteen years. Searle said she rode to Kansas City with Clizer four times to pick up drugs. Searle estimated that Clizer picked up approximately one pound of powder cocaine and approximately one pound and ten ounces of methamphetamine. Searle said that Clizer was making trips to the city every two or three days to pick up powder cocaine and methamphetamine. Searle said that she purchased an eight ball of methamphetamine and pills once a day from Clizer for about seven months. Searle said Clizer would convert the powder cocaine into crack cocaine and then have her boyfriend Tyrone Pearcill sell the crack cocaine. Searle said that Pearcill carried a small handgun on his person. Searle said that Clizer carried a 9mm for protection and would keep the gun under her front seat while inside her vehicle.

On June 16, 2015, Missouri Department of Corrections officials intercepted a controlled substance sent into the prison by Clizer.

On June 18, 2015, investigators interviewed Dana Boatwright at the Buchanan County Jail. During the interview, Boatwright admitted buying methamphetamine and crack cocaine from Clizer. Boatwright said she only personally bought from Clizer twice and they were forty or fifty dollar amounts. However, Boatwright said that Clifford Kelly bought from Clizer on a regular basis and introduced her to Clizer.

On June 23, 2015, a CI told investigators that Robert Pollard purchased a gram of methamphetamine from Clizer. The CI said that later in the evening Pollard was arrested by the

2

Drug Strike Force. The following day, investigators interviewed Pollard at the Buchanan County Jail. During the interview, Pollard told investigators that he bought user amounts of methamphetamine from Caci Clizer two or three times a week. Pollard said that Clizer typically has an ounce of methamphetamine with her in her vehicle but on three occasions during the previous month, she had what appeared to be a half pound of methamphetamine. Pollard said the first time he met Clizer she had a half pound of crack cocaine with her. Pollard said that Clizer has been robbed in the past and therefore she carries a handgun for protection. Pollard believed she carried a 9mm.

On July 3, 2015, TFO Collie observed Clizer, Pearcill and an unknown black female at the South Belt Speedy's. During this time, TFO Collie observed Clizer meet with four different individuals and conduct hand-to-hand transactions.

On July 5, 2015, Robert Pollard contacted TFO Collie regarding information he had concerning Pearcill being involved in a police pursuit.

On July 6, 2015, investigators reviewed Kansas City, Missouri Police Department reports pertaining to Clizer and a April 21, 2015, law enforcement contact. During that event, an officer located approximately seven and a half grams of cocaine, sixty-four pills and one thousand and fifty-eight dollars. Officers also later recovered a Taurus .40 caliber handgun and approximately 17 grams of powder cocaine from the vehicle.

On July 12, 2015, Robert Pollard contacted TFO Collie with some information about Clizer. Pollard advised Clizer, Pearcill and a black female named "Ree Ree" moved to 1701 Boyd Street. Pollard told TFO Collie that Clizer talked about getting a couple pounds of methamphetamine a week and breaking it down into ounces to sell. Pollard also said that Clizer talked about a person named John Stiles who is supposedly selling an ounce of methamphetamine a week for Clizer.

On July 12, 2015, investigators interviewed Andrew S. Roberts at the Buchanan County Jail. During the interview, Roberts said he has known Clizer for about a month and met her through his girlfriend Kelly Watson. Roberts said that during that month he and Watson purchased approximately twenty ounces of methamphetamine from Clizer. Roberts said that (along with cash) they would trade pills and guns to Clizer to lower the price of the methamphetamine. Roberts said that Clizer would typically have about a quarter pound of methamphetamine with her during the deals.

On July 16, 2015, a CI contacted Special Agent Dimechi Herring who told the agent that while inside Clizer's residence he/she observed several firearms, over an ounce of methamphetamine, over an ounce of crack cocaine and over an ounce of powder cocaine.

## PROBABLE CAUSE FOR SEARCH WARRANT

On July 18, 2015, Pollard contacted TFO Collie and informed him that Pollard had been inside the 1701 Boyd Street residence and saw Clizer, Pearcill and Sanders. Pollard said that while at the residence he observed a Glock pistol with a drum style magazine on the bed. On

3

July 26, 2015, TFO Collie drove by 1701 Boyd, and documented vehicles and license plate numbers, and applied for a search warrant, which was issued.

On July 22, 2015, investigators applied for a federal search warrant and on this day, the Honorable Judge Sarah W. Hays signed the order. On July 29, 2015, at approximately 6:02 a.m., investigators initiated the federal search warrant at 1701 Boyd Street. Investigators located and detained Clizer and Pearcill inside the master bedroom that was secured with a dead bolt lock. During the ensuing search of the master bedroom, investigators recovered approximately one pound of methamphetamine (505.84 grams), approximately one hundred three (103.55) grams of powder cocaine, 18.12 grams crack cocaine, pills, scales, three thousand and twenty dollars ($3,020.00), three handguns and one rifle.

Besides Clizer and Pearcill, investigators detained the following individuals:

a. Sarah Jean Vaughn;
b. Cody L. Slavin;
c. Kelvin L. Starr; and,
d. Mortez C. Falkner.

TFO Collie interviewed (audio recorded) Clizer who admitted to possessing the Glock with a fifty round drum magazine for protection. Clizer acknowledged that methamphetamine seized from her bedroom weighed approximately a pound. Clizer admitted buying powder cocaine and crack cocaine and when asked about an off-colored substance and whether the substance was heroin or not, Clizer replied that it was just a funny color.

On July 30, 2015, investigators attempted to interrogate Pearcill however he invoked his right to counsel and the interview ceased.

The firearms included: a) a Glock, Model 26, 9mm semi-automatic handgun, bearing Serial Number RYX317; 2) a Bersa, Model Firestorm, .380 caliber, semi-automatic handgun, bearing Serial Number 819640; c) Springfield Inc. (DBA "Springfield Armory"), Model XD-9, 9mm, semi-automatic handgun, bearing Serial Number MG933966. Additionally, investigators recovered a 9mm 50-round drum (magazine) on a shelf inside of the master bedroom closet.

Investigators recovered the Glock underneath the bed inside the master bedroom. Investigators recovered the Bersa on the nightstand in the master bedroom. Investigators found the Springfield Armory firearm inside a purse recovered from the master bedroom closet. Investigators recovered a Savage, Model 26 Crackshot, .22 caliber rifle in the closet of the master bedroom. This firearm had no visible serial number. The Glock was manufactured in Austria, the Bersa was manufactured in Argentina, and the Springfield Armory firearm was manufactured in Croatia.

Additionally, investigators recovered a box containing 92 rounds of .380 ammunition and 20 rounds of 9mm ammunition on the nightstand. Investigators recovered a bag containing approximately 27.7 grams of methamphetamine inside a white shoe hanging on the closet door. Investigators also recovered a "Fuzion Xtreme" digital scale and a receipt from Nodaway Valley

4

Bank in Clizer's name. Further, investigators recovered five (5) cell phones from inside the master bedroom.

A review of Clizer's prior criminal history reveals the following convictions:

> On August 17, 2006, Clizer plead guilty to felony possession of a controlled substance in Buchannan County, Circuit Court case number 06BU-CR01463-01, and was sentenced to four (4) years in the Missouri Department of Corrections.
>
> On November 21, 2011, Clizer plead guilty felony possession of a controlled substance in Buchannan County, Missouri, Circuit Court case number 11BU-CR01769-01, and was sentenced to four (4) years in the Missouri Department of Corrections.

On June 30, 2017, the Missouri State Highway Patrol Crime Laboratory Division issued a report that revealed that the crystal substance recovered from Clizer's master bedroom weighed 504.74 grams and determined that is contained methamphetamine, a Schedule II controlled substance. On July 28, 2017, the lab issued a follow-up report, which determined that the above-referenced substance was 96.6% pure, thus yielding 484 grams of actual methamphetamine.

4. **Use of Factual Admissions and Relevant Conduct**. The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining her guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the superseding indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which she is pleading guilty.

5. **Statutory Penalties**. The defendant understands that upon her plea of guilty to the lesser-included offense of Count One of the indictment charging her conspiracy to distribute methamphetamine actual the minimum sentence the Court must impose is 5 years and the maximum punishment is 40 years, a $5,000,000.00 fine, no less than four (4) years supervised release and a mandatory $100 special assessment which must be paid in full at the time of sentencing.

The defendant understands that upon her plea of guilty to Count Three of the indictment charging her with knowingly possessing firearms in furtherance of a drug-trafficking crime, the minimum sentence the Court must impose is 5 years, which must run consecutive to any term of imprisonment imposed for Count One, no more than a $250,000.00 fine, not more than three years of supervised release, and a mandatory $100 special assessment which must be paid in full at the time of sentencing.

6. **Sentencing Procedures**. The defendant acknowledges, understands and agrees to the following:

   a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines however are advisory in nature, and the Court ordinarily may impose a sentence either less than or greater than the court-determined advisory Guidelines range, unless the sentence imposed is "unreasonable;";

   b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

   c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of at least 3 years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

   d. if the defendant violates a condition of her supervised release, the Court may revoke her supervised release and impose an additional period of imprisonment of up to 2 years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may

6

impose a new period of supervised release, the length of which cannot exceed 2 years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

  e. any sentence of imprisonment imposed by the Court will not allow for parole;

  f. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

  g. the defendant may not withdraw her guilty plea solely because of the nature or length of the sentence imposed by the Court.

 7. **Government's Agreements**. Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to conspiracy to distribute methamphetamine "actual" for which it has venue and which arose out of the defendant's conduct described above. Additionally, the Government agrees to dismiss Counts Two and Four at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives her right to challenge the initiation of the dismissed or additional charges against her if she breaches this agreement. The defendant

expressly waives her right to assert a statute of limitations defense if the dismissed or additional charges are initiated against her following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against her following her breach of this plea agreement, she will not be allowed to withdraw her guilty plea.

8. **Preparation of Presentence Report**. The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of her criminal activities. The defendant understands these disclosures are not limited to the count to which she has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea**. Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw her plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable;"

    b. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2D1.1(4), which provides for a base offense level of at least 30;

    c. The defendant has admitted her guilt and clearly accepted responsibility for her actions, and has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, she is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and her pretrial release; or (2) attempts to withdraw her guilty plea, violates the law, or otherwise engages in conduct inconsistent with her acceptance of responsibility;

    d. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine her applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

    e. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does **not** bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw her plea of guilty;

    f. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the superseding indictment. The defendant also agrees that the Court, in finding the facts relevant

to the imposition of a sentence, may consider any reliable information, including hearsay; and

      g. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that she will make during her plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications**. The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing**. The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights**. The defendant understands that the United States expressly reserves the right in this case to:

      a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

      b. comment on the evidence supporting the charge in the superseding indictment;

      c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights**. The defendant, by pleading guilty, acknowledges that she has been advised of, understands, and knowingly and voluntarily waives the following rights:

   a. the right to plead not guilty and to persist in a plea of not guilty;

   b. the right to be presumed innocent until her guilt has been established beyond a reasonable doubt at trial;

   c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

   d. the right to confront and cross-examine the witnesses who testify against her;

   e. the right to compel or subpoena witnesses to appear on her behalf; and

   f. the right to remain silent at trial, in which case her silence may not be used against her.

The defendant understands that by pleading guilty, she waives or gives up those rights and that there will be no trial. The defendant further understands that if she pleads guilty, the Court may ask her questions about the offense or offenses to which she pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making a false statement. The defendant also understands she has pleaded guilty to a felony offense and, as a result, will lose her right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

11

15. **Waiver of Appellate and Post-Conviction Rights**.

    a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement she waives her right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

    b. The defendant expressly waives her right to appeal her sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal her sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations**. By entering into this plea agreement, the defendant represents that she understands and agrees to the following financial obligations:

    a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the superseding indictment which are to be dismissed and all other uncharged related criminal activity.

    b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

    c. The defendant will fully and truthfully disclose all assets and property in which she has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

    d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States

makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to her to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $200 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

h. The defendant certifies that she has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that she will make no such transfers in the future.

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request**. The defendant waives all of her rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be

sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees**. The defendant waives all of her claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement**. If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw her plea of guilty.

The defendant also understands and agrees that in the event she violates this plea agreement, all statements made by her to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against her in any and all criminal proceedings. The defendant waives any rights that she might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by her subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that she has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that she is satisfied with the assistance of counsel, and that counsel has fully advised her of her rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, her attorneys or any other party to induce her to enter his plea of guilty.

21. **Immigration Consequences.** The defendant understands that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to conspiracy to distribute methamphetamine "actual," removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms she wants to plead guilty regardless of any immigration consequences that her guilty plea may entail, even if the consequence is her automatic removal from the United States. Further, the defendant understands that she is bound by her guilty plea regardless of any immigration consequences of the plea and regardless of any advice the defendant has received from her counsel or others regarding those consequences. Accordingly, the defendant waives any and all challenges to her guilty plea and to her sentence based on those consequences, and agrees not to seek to withdraw

15

her guilty plea, or to file a direct appeal or collateral attack of any kind challenging her guilty plea, conviction or sentence, based on the immigration consequences of her guilty plea, conviction and sentence.

22. **No Undisclosed Terms**. The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23. **Defendant Will Surrender to Custody At The Plea**. The defendant understands that the crime to which she is pleading, that is, conspiracy to distribute methamphetamine "actual" is an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. Accordingly, pursuant to 18 U.S.C. § 3143(a)(2), the Court must detain the defendant after she pleads guilty to the offense. The defendant hereby agrees not to contest detention immediately after the guilty plea, and to surrender to the custody of the U.S. Marshals at that time.

24. **Standard of Interpretation**. The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Dated: 10-16-20

Timothy A. Garrison
United States Attorney

Stefan C. Hughes
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the superseding indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 10-16-2020

Caci R. Clizer
Defendant

I am defendant Caci R. Clizer's attorney. I have fully explained to her her rights with respect to the offense charged in the superseding indictment. Further, I have reviewed with her the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with her. To my knowledge, Caci R. Clizer's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 10-16-20

John O'Connor
Attorney for Defendant